UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROY FOSTER OTIS,

        Petitioner,

v.

DEAN BORDERS, Warden,

        Respondent.

NO. CV 17-8456-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On November 20, 2017, Petitioner, a California state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) The operative pleading is the First Amended Petition ("FAP"), which Petitioner filed on December 26, 2017. (Dkt. No. 8.) The parties have consented to the jurisdiction of the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt Nos. 12 and 20.)

///
///
///

On December 3, 2018, Respondent filed an Answer to the FAP and lodged with the Court the relevant state court records. (Dkt. Nos. 29 and 30.) Petitioner did not file a Reply within the allotted time or seek an extension of time to do so. Briefing in this action is now complete, and the matter is under submission to the Court for decision.

**PRIOR PROCEEDINGS**

On May 10, 2016, a Los Angeles County Superior Court jury convicted Petitioner of assault by means of force likely to produce great bodily injury (Count One, California Penal Code ("Penal Code") § 245(a)(4)) and assault with a deadly weapon (Count Two, Penal Code § 245(a)(1)). (Clerk's Transcript ("CT") 131-32; 4 Reporter's Transcript ("RT") 1203-04.) As to Count One, the jury found true the allegation that Petitioner personally inflicted great bodily injury upon the victim (Penal Code § 12022.7(a)). (CT 131; 4 RT 1203.) On June 23, 2016, the trial court sentenced Petitioner to six years in state prison. (CT 186; 4 RT 1559.)

Petitioner appealed his judgment of conviction. (Lodgment ("Lodg.") No. 1.) On May 30, 2017, the California Court of Appeal affirmed the judgment in a reasoned, unpublished opinion. (Lodg. No. 4.) Petitioner then filed a Petition for Review in the California Supreme Court (Lodg. No. 5), which summarily denied the petition without comment or citation of authority on August 9, 2017 (Lodg. No. 6).

On November 20, 2017, Petitioner filed this Petition, raising nine grounds for federal habeas relief. (Dkt. No. 1.) On November 28, 2017, the Court issued an order stating that Petitioner's claims in Grounds Three to Nine appeared to be unexhausted. (Dkt. No. 3.) The Court gave Petitioner four options and ordered him to state how he wished to proceed. (*Id*.) On December 26, 2017, Petitioner filed a notice stating that he wished to dismiss voluntarily his claims in Grounds Three to Nine. (Dkt. Nos. 5, 7.) On the same date, Petitioner filed the FAP, in which he raised only Grounds One and Two. (Dkt. No. 8.) On January 22, 2018,

Petitioner filed a notice of voluntary dismissal of Grounds Three to Nine pursuant to Rule 41(a)(1)(A) of the Federal Rules of Civil Procedure. (Dkt. Nos. 6, 9.) On January 29, 2018, the Court ordered Respondent to file a response to the FAP. (Dkt. No. 10.)

On May 10, 2018, Respondent filed a Motion to Dismiss the FAP on the basis that Grounds One and Two had not been fairly presented as federal claims in the state courts and therefore were unexhausted. (Dkt. No. 18.) On July 19, 2018, Petitioner filed an Opposition to the Motion. (Dkt. No. 23.) On September 6, 2018, the Court denied the Motion without prejudice and directed Respondent to file an Answer to the FAP that addressed both the merits of Petitioner's claims and any procedural issues. (Dkt. No. 24.) On December 3, 2018, Respondent filed an Answer. (Dkt. No. 29.) Petitioner did not file a Reply.

## SUMMARY OF THE EVIDENCE AT TRIAL

The following factual summary from the California Court of Appeal's unpublished decision on direct review is provided as background. *See also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence).

**FACTS**[2]

[2] [Petitioner] did not present any evidence in his defense.

On June 1, 2015, the victim, Mayra Castillo, exited Wells Fargo Bank and returned to her car, carrying her six-month-old son. Castillo was parked in the bank parking lot. The parking stall on the driver's side of her car was vacant. Castillo opened the back driver's side door and began securing her son in a child safety seat. Her open car door and her body were blocking the empty space next

to her vehicle.  [Petitioner] pulled up in a black car and began turning into the parking space Castillo was blocking.  [Petitioner] honked, but Castillo ignored him and continued securing her son in the car seat.  [Petitioner] honked a second time and then began yelling at Castillo.  She turned and told him to wait while she finished putting her child in the car.

[Petitioner] got out of his car and approached Castillo, gesticulating as if he was "furious."  He said something, but Castillo primarily spoke Spanish and did not fully understand him.  Castillo was afraid of [Petitioner], so she closed the door to protect her son.[3]  [Petitioner] punched her in the eye, and then punched her more than 10 times on her face, head, back, and arms, and pulled her hair.  Castillo went in and out of consciousness as [Petitioner] was hitting her.  He punched her in the back, and she fell into the empty parking space.  The impact of the fall injured her back.  [Petitioner] continued to attack Castillo, hitting her more as she lay on the ground.  He kicked her approximately seven times in the back and ribs.  Castillo felt very weak and could not fight back.

> [3] [Petitioner] is substantially larger than Castillo.  He is 5 feet 11 inches tall, and weighed 270 pounds at the time of the attack.  Castillo is 5 feet 4 inches tall.

Rebecca Madrigal was waiting in a drive-through ATM line at the bank when she heard [Petitioner] honking and turned to see what was happening.  She saw [Petitioner] approach Castillo and ask her to close her car door.  Madrigal turned to use the ATM, but looked back when she heard Castillo screaming for help.  Madrigal saw [Petitioner] punching Castillo with closed fists as if he was "fighting" or "hitting a guy."  Castillo was screaming and crying.  She did not fight back.  Madrigal saw [Petitioner] knock Castillo to the ground.  She got out

of her car and walked toward [Petitioner], yelling for him to stop. [Petitioner] stopped after she screamed at him. When Madrigal reached the empty parking space, Castillo hugged her legs. She tried to help Castillo stand, but Castillo could not get up, so Madrigal knelt beside her in the empty parking space.

[Petitioner] looked at the women for about 10 seconds and then got into his car and resumed pulling into the spot. Castillo was still on the ground with her legs in the parking space. Madrigal was able to quickly drag her out of the way of [Petitioner's] car, which would have run over Castillo's legs if Madrigal had not taken action. [Petitioner] pulled into the spot quickly, coming very close to hitting Castillo. He parked about one foot away from Castillo, in the place where her legs had been a moment earlier. [Petitioner] got out of his car and went into the bank.

Officer Frank Kim was the first police officer to respond to the scene. He saw Castillo lying on the ground between two vehicles. She was on her back, crying hysterically. The cars were parked closely together on either side of Castillo's body. Officer Kim could not see Castillo well because her hair was "all over the place," but he did observe that her face was bruised and swollen, and there appeared to be blood behind one of her ears. He notified the fire department, which already had a vehicle en route, that Castillo had been punched several times and that there was a crying baby in a car seat in the rear of the vehicle.

Officer Young Choi arrived and entered the bank. [Petitioner] was sitting calmly in a chair in the lobby. He asked the officer, "Are you looking for me?" [Petitioner] was taken into custody shortly thereafter.

|   |   |
|---|---|
| 1 | Castillo was taken to the hospital. Medical staff x-rayed her for broken |
| 2 | bones, examined her, and cleaned her abrasions, including the wound on her back. |
| 3 | Castillo could not move her neck and felt a lot of pain in that area. She was placed |
| 4 | in a cervical collar and given pain medicine. Castillo experienced lasting visual |
| 5 | impairment in one eye, which [Petitioner] hit very hard with a closed fist. She |
| 6 | could no longer see with the same intensity and had blurry vision as a result of the |
| 7 | attack. Castillo suffered a black eye and bruising in several places on her face, |
| 8 | arms, legs, and back.[4] Her back was permanently scarred in the place where she |
| 9 | hit the pavement when [Petitioner] knocked her to the ground. |

> [4] Photographs of Castillo's injuries were shown to the jury.

In a recorded interview with Officer Michael Ross, [Petitioner] explained that he had gone to the bank because someone had accessed his account.[5] He was angry already and could not understand why Castillo would not close her door so that he could park. He said she kept "flapping her jaws" and "talking crazy." He "probably" hit her three to four times. He could not remember if he hit her with a closed fist, but he did not think he did. He may have continued to hit her after she fell to the ground.

> [5] A recording of the interview was played for the jury, which was also provided with a transcript.

(Lodg. No. 4 at 3-6.)

///
///
///
///

**PETITIONER'S HABEAS CLAIMS**

Petitioner presents the following grounds for habeas relief.

*Ground One*: The trial court erred in denying Petitioner's request to instruct the jury on the lesser-included offense of simple assault. (FAP, Attached Petition for Review ("Exhibit A") at 6-13.)

*Ground Two*: The evidence presented at trial was insufficient to support the jury's finding that Petitioner personally inflicted great bodily injury on the victim. (FAP Exhibit A at 14-17.)

**EXHAUSTION ISSUE**

As an initial matter, Respondent renews his argument that the FAP should be dismissed without prejudice because Petitioner did not exhaust either of his claims in the California Supreme Court. (Answer at 6-8.) For the reasons discussed below, the Court finds that dismissal is not warranted for lack of exhaustion.

I. **Exhaustion Standard**

A state prisoner must exhaust his state court remedies before a federal court may consider granting habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1)(A). For a prisoner in California, this means that he must have fairly presented his federal claims to the California Supreme Court. *See James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).

To satisfy the exhaustion requirement, a habeas petitioner must have fairly presented his claim by describing to the state court both the federal legal theory and the operative facts on

which each ground for relief is based. *See Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) ("[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief."). "The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis." *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999) (citations omitted).

Respondent's exhaustion argument focuses on whether Petitioner fairly presented a federal legal theory for each of his claims. (Answer at 7-8.) "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (*per curiam*). "In order to alert the state court, a petitioner must make reference to provisions of the federal Constitution or must cite either federal or state case law that engages in a federal constitutional analysis." *Fields v. Waddington*, 401 F.3d 1018, 1021 (9th Cir. 2005) (citations omitted). Nonetheless, a petitioner is not required to cite "book and verse on the federal constitution." *See Picard v. Connor*, 404 U.S. 270, 278 (1971) (citation omitted). Rather, "the substance" of the legal basis of a federal habeas corpus claim must be fairly presented to the state courts. *See id*.

II. **Analysis**

A. **Ground One Is Not Subject to the Exhaustion Requirement.**

In Ground One, Petitioner claims that the trial court erred in denying his request to instruct the jury on the offense of simple assault, a lesser-included offense of the crime of assault by means of force likely to produce great bodily injury. (FAP Exhibit A at 6-13.) The California Court of Appeal found no error in the trial court's refusal to give the instruction, after finding that the evidence did not warrant it. (Lodg. No. 4 at 7-10.) Petitioner

subsequently raised this claim in his Petition for Review, which the California Supreme Court summarily denied. (Lodg. No. 6.)

Respondent argues that this claim is unexhausted because Petitioner did not cite any federal authority for this claim before the California Supreme Court. (Answer at 8.) However, if a claim is not cognizable on federal habeas review, the federal exhaustion requirement does not apply. *See Engle v. Isaac*, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts."); *Gutierrez v. Griggs*, 695 F.2d 1195, 1197-98 (9th Cir. 1983) ("Insofar as Gutierrez simply challenges the correctness of the state evidentiary rulings and the jury instructions, he has alleged no deprivation of federal rights. When a state prisoner has failed to allege a deprivation of a federal right, § 2254 does not apply and it is unnecessary for us to determine whether the prisoner satisfied the § 2254(b) exhaustion requirement.") (citation omitted). Here, Respondent contends that Petitioner's claim in Ground One of the FAP is not cognizable on federal habeas review because he fails to allege a federal constitutional violation. (Answer at 12-13.) If Respondent is correct, the exhaustion requirement does not apply to Ground One.

The Court concurs with Respondent that Petitioner's claim in Ground One that the trial court erred in refusing his request for an instruction on a lesser-included offense fails to raise a federal question. As a general rule, a state court's determination as a matter of state law that an instruction was not warranted by the evidence is not cognizable on federal habeas review. *See Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) ("Any error in the state court's determination of whether state law allowed for an instruction in this case cannot form the basis for federal habeas relief."). Likewise, a state court's failure in a non-capital case to give an instruction on a lesser-included offense, either *sua sponte* or upon the petitioner's request, does not present a federal constitutional question. *See Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998) ("Under the law of this circuit, the failure of a state court to instruct on

lesser included offenses in a non-capital case does not present a federal constitutional question."); *Bashor v. Risley*, 730 F.2d 1228, 1240 (9th Cir. 1998) ("Failure of a state court to instruct on a lesser offense [in a non-capital case] fails to present a federal constitutional question and will not be considered in a federal habeas corpus proceeding.") (quoting *James v. Reese*, 546 F.2d 325, 327 (9th Cir. 1976)); *see also Bagby v. Sowders*, 894 F.2d 792, 795 (6th Cir. 1990) ("[W]here, as here, the highest court of a state has reviewed a defendant's request for a lesser included offense instruction and concluded that it is not warranted by the evidence elicited at trial, that conclusion is axiomatically correct, as a matter of state law."); *Chavez v. Kirby*, 848 F.2d 1101, 1103 (10th Cir. 1988) (holding that the denial of a non-capital habeas petitioner's request during trial for a lesser-included offense instruction was not cognizable as a federal claim, citing a rule of "automatic non-reviewability"); *Perry v. Smith*, 810 F.2d 1078, 1080 (11th Cir. 1987) (same, and finding it immaterial that the petitioner had requested the instruction because "a request for such a charge fails to invoke a due process right for the simple reason that the right does not exist"); *Pitts v. Lockhart*, 911 F.2d 109, 112 (8th Cir. 1990) ("A majority of the circuits considering this difficult issue have held that the failure of a state court to instruct on a lesser included offense in a noncapital case never raises a federal constitutional question.").

Although the Ninth Circuit recognizes an exception to this general rule, it does not apply here. In some circumstances, "the refusal by a court to instruct a jury on lesser included offenses, when those offenses are consistent with defendant's theory of the case, may constitute a cognizable habeas claim[.]" *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000); *Bashor*, 730 F.2d at 1240. Here, however, the lesser-included offense of simple assault had nothing to do with Petitioner's theory of the case, which was reasonable doubt that he had committed any crime. (4 RT 1002-28.) Thus, it remains the case that Petitioner's claim of entitlement to an instruction on a lesser-included offense is not cognizable on federal habeas review.

Because Petitioner's claim in Ground One fails to present a federal question, it is dismissed not for lack of exhaustion, but for non-cognizability. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). However, this does not preclude the Court from considering Petitioner's remaining claim in Ground Two of insufficiency of the evidence, both for exhaustion and on the merits. *See Insyxiengmay v. Morgan*, 403 F.3d 657, 667 (9th Cir. 2005) ("Exhaustion is determined on a claim-by-claim basis."); *Nelson v. Solem*, 714 F.2d 57, 60 n.2 (8th Cir. 1983) ("If [petitioner's] claim could be construed only as a state law claim, then failure to exhaust this claim would not prevent the district court from considering the remaining exhausted federal claim.").

**B.  Ground Two Is Exhausted.**

In Ground Two, Petitioner claims that the evidence presented at trial was insufficient to support the jury's finding that he personally inflicted great bodily injury upon the victim. (FAP Exhibit A at 14-17.) The California Court of Appeal rejected this claim after finding substantial evidence for the jury's finding. (Lodg. No. 4 at 12-14.) Petitioner subsequently raised this claim in his Petition for Review, which the California Supreme Court summarily denied. (Lodg. No. 6.)

Respondent argues that this claim is unexhausted because Petitioner did not cite any federal authority for this claim before the California Supreme Court. (Answer at 8.) However, in his Petition for Review in the California Supreme Court, Petitioner cited *People v. Johnson*, 26 Cal. 3d 557, 578 (1980), which recognizes that California's legal standard for claims of insufficiency of the evidence is identical to the corresponding federal standard. (Lodg. No. 5 at 14.) It is an open question in the Ninth Circuit whether a habeas petitioner can satisfy the federal exhaustion requirement solely by relying on a state standard that is identical to the federal standard when presenting the claim to the state courts. *See Fields*, 401 F.3d at 1022-

24 (assuming that raising an identical state standard could suffice to exhaust a claim but finding that the petitioner had failed to show identical treatment); *see also Casey v. Moore*, 386 F.3d 896, 914 (9th Cir. 2004) (finding it unnecessary to resolve the issue because the state and federal standards were not identical); *Peterson v. Lampert*, 319 F.3d 1153, 1160 (9th Cir. 2003) (*en banc*) (same). However, the Ninth Circuit has held that a petitioner's reliance on an identical state standard can be one of multiple factors showing that he had fairly presented his claim. *See Sanders v. Ryder*, 342 F.3d 991, 1000 (9th Cir. 2003) (holding that a petitioner's claim of "ineffective assistance of counsel" in the Washington state courts was exhausted because the standards for the claim are the same under state and federal law, but also because the petitioner was *pro se* and had cited federal authorities in his reply brief).

For a petitioner to satisfy the federal fair presentation requirement solely by relying on an identical state standard, he must show that the state courts would treat the claims identically by, for example, producing an affirmative statement by the state's highest court that the state and federal standards are identical. *See Fields*, 401 F.3d at 1024. The California Supreme Court repeatedly has made such affirmative statements about claims of insufficiency of the evidence. *See Johnson*, 26 Cal. 3d at 576 ("California decisions state an identical standard."); *People v. Young*, 34 Cal. 4th 1149, 1175 (2005) ("We apply an identical standard under the California Constitution."); *People v. Staten*, 24 Cal. 4th 434, 460 (2000) ("An identical standard applies under the California Constitution.").

Given the affirmative statements by the California Supreme Court that the state and federal standards for claims of insufficiency of the evidence are identical, the Court finds that Petitioner's reliance on the California standard was sufficient to satisfy the federal requirement of fair presentation. In the absence of a Ninth Circuit decision holding that a petitioner's reliance on an identical state standard by itself satisfies the fair presentation requirement, the Court finds persuasive the decisions of other courts finding that it does. *See Nunez v. Gibson*, 2017 WL 3600408, at *13 (C.D. Cal. May 11, 2017) ("[I]n the absence of guidance from the

Ninth Circuit, the Court finds that where, as here, the state and federal standards are identical, the state court necessarily had a fair opportunity to pass on a petitioner's federal claim.") (collecting similar district court cases from the Ninth Circuit); *see also Evans v. Court of Common Pleas*, 959 F.2d 1227, 1233 (3d Cir. 1992) ("[T]he test for insufficiency of the evidence is the same under both Pennsylvania and federal law. . . . As such the method of analysis asserted in the federal courts was readily available to the state court.") (citations and internal quotation marks omitted); *Nadworny v. Fair*, 872 F.2d 1093, 1102 (1st Cir. 1989) (finding a claim had been fairly presented because "the test for reviewing sufficiency of the evidence is essentially identical under [Massachusetts] law as under the Constitution").

Moreover, it is reasonable to conclude that the California courts' rejection of this claim under the identical California standard for insufficiency of the evidence necessarily resolved the federal constitutional claim. *See Smart v. Hedgpeth*, 476 F. App'x 803 (9th Cir. 2012) (finding that for a California prisoner's claim of insufficiency of the evidence, "the rejection of [his] identical state claim necessarily answered the federal constitutional question"); *see also Juan H. v. Allen*, 408 F.3d 1262, 1274 n.12 (9th Cir. 2005) (finding that because it is unnecessary for state courts to cite federal law in rejecting a federal claim, a California court's use of a state law standard, with state court decisions such as *Johnson*, to reject an insufficiency of the evidence claim was enough to subject the claim to federal habeas review under 28 U.S.C. § 2254(d)(1)). It therefore would serve no purpose in these circumstances for Petitioner to return to the California Supreme Court so that it may apply the identical standard, which had been applied once already on direct review, to resolve the federal constitutional claim. *See Castille v. Peoples*, 489 U.S. 346, 350 (1989) ("[O]nce the state courts have ruled upon a claim, it is not necessary for a petitioner 'to ask the state for collateral relief, based upon the same evidence and issues already decided by direct review.'") (quoting *Brown v. Allen*, 344 U.S. 443, 447 (1953)). For these reasons, dismissal of Ground Two for lack of exhaustion is unwarranted, and it will be reviewed on the merits.

**STANDARD OF REVIEW**

I. **The Antiterrorism And Effective Death Penalty Act**

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner whose claim has been "adjudicated on the merits" cannot obtain federal habeas relief unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For the purposes of Section 2254(d), "clearly established Federal law" refers to the Supreme Court holdings in existence at the time of the state court decision in issue. *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011); *see also Kernan v. Cuero*, __ U.S. __, 138 S. Ct. 4, 9 (2017) (*per curiam*) ("circuit precedent does not constitute clearly established federal law. . . . [n]or, of course, do state-court decisions, treatises, or law review articles") (internal quotation marks and citations omitted). A Supreme Court precedent is not clearly established law under § 2254(d)(1) unless it "squarely addresses the issue" in the case before the state court or establishes a legal principle that "clearly extends" to the case before the state court. *Moses v. Payne*, 555 F.3d 742, 760 (9th Cir. 2009); *see also Harrington v. Richter*, 562 U.S. 86, 101 (2011) (it "'is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by'" the Supreme Court) (citation omitted).

A state court decision is "contrary to" clearly established federal law under Section 2254(d)(1) only if there is "a direct and irreconcilable conflict," which occurs when the state court either (1) arrived at a conclusion opposite to the one reached by the Supreme Court on a

question of law or (2) confronted a set of facts materially indistinguishable from a relevant Supreme Court decision but reached an opposite result. *Murray v. Schriro*, 745 F.3d 984, 997 (9th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application" of clearly established federal law under Section 2254(d)(1) if the state court's application of Supreme Court precedent was "objectively unreasonable, not merely wrong." *White v. Woodall*, 572 U.S. 415, 419 (2014). The petitioner must establish that "there [can] be no 'fairminded disagreement'" that the clearly established rule at issue applies to the facts of the case. *See id.* at 1706-07 (internal citation omitted). Finally, a state court's decision is based on an unreasonable determination of the facts within the meaning of 28 U.S.C. § 2254(d)(2) when the federal court is "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir.) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 710 (2014). So long as "'[r]easonable minds reviewing the record might disagree,'" the state court's determination of the facts is not unreasonable. *See Brumfield v. Cain*, ___ U.S. ___, 135 S. Ct. 2269, 2277 (2015).

AEDPA thus "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *White v. Wheeler*, __ U.S. __, 136 S. Ct. 456, 460 (2015) (*per curiam*) (internal quotation marks and citation omitted). Petitioner carries the burden of proof. *See Pinholster*, 563 U.S. at 181.

II.     **The State Court Decision On Ground Two Is Entitled To AEDPA Deference.**

As noted, the only cognizable claim here is Petitioner's claim in Ground Two of insufficiency of the evidence. Petitioner raised it on direct review in the California Court of Appeal. (Lodg. No. 1 at 21-24.) The California Court of Appeal denied the claim in a reasoned decision on the merits. (Lodg. No. 4 at 12-14.) Petitioner then presented the claim to the

California Supreme Court in the Petition for Review (Lodg. No. 5 at 14-17), which the California Supreme Court denied summarily without comment or citation to authority (Lodg. No. 6). Thus, Section 2254(d) applies, and the Court looks through the California Supreme Court's summary denial to the last reasoned decision – the decision of the California Court of Appeal on direct review – to determine whether the state court's adjudication of Ground Two is unreasonable or contrary to clearly established federal law. *See Johnson v. Williams*, 568 U.S. 289, 297 n.1 (2013) ("Consistent with our decision in *Ylst v. Nunnemaker*, 501 U.S. 797, 806 (1991), the Ninth Circuit 'look[ed] through' the California Supreme Court's summary denial of [the petitioner's] petition for review and examined the California Court of Appeal's opinion."); *see also, e.g.*, *Jones v. Harrington*, 829 F.3d 1128, 1136 (9th Cir. 2016) (looking through California Supreme Court's summary denial of a petition for review to the California Court of Appeal's decision on direct review).

## DISCUSSION

Petitioner claims that the evidence was insufficient to support the jury's finding that he personally inflicted great bodily injury on the victim. (FAP Exhibit A at 14-17.)

I. **Legal Standard**

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When a habeas petitioner challenges the sufficiency of the evidence supporting the jury's verdict, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Coleman v. Johnson*, 566 U.S. 650, 656 (2012) (*per curiam*) ("question under *Jackson* is whether [the jury's] finding

was so insupportable as to fall below the threshold of bare rationality."). *Jackson* does not require that the prosecutor affirmatively "'rule out every hypothesis except that of guilt.'" *Wright v. West*, 505 U.S. 277, 296 (1992) (citation omitted). Further, "'[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted). When the factual record supports conflicting inferences, the federal court must presume – even if it does not affirmatively appear on the record – that the trier of fact resolved any such conflicts in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326; *McDaniel v. Brown*, 558 U.S. 120, 133 (2010). Ultimately, for Petitioner's claim to be successful, the jury's finding must be "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 132 S. Ct. at 2065.

When, as here, both *Jackson* and AEDPA apply to the same claim, the claim is reviewed under a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (*per curiam*). Accordingly, this Court's inquiry is limited to whether the California courts' rejection of Petitioner's insufficiency of the evidence claims was an objectively unreasonable application of *Jackson*. *See Emery v. Clark*, 643 F.3d 1210, 1213-14 (9th Cir. 2011); *Juan H. v. Allen*, 408 F.3d 1262, 1275 n.13 (9th Cir. 2005).

II. **Analysis**

Petitioner argued that the victim's injuries were not sufficiently serious to qualify as great bodily injury. (FAP Exhibit A at 14-17.) The California Court of Appeal disagreed:

> Section 12022.7, subdivision (a), provides: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." "The

determination whether a particular victim has suffered physical harm that amounts to 'great bodily injury' is typically a question of fact to be resolved by the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 63 (*Cross*).) Great bodily injury is defined in section 12022.7, subdivision (f), as 'significant or substantial physical injury.' However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.' (*Cross*, *supra*, at p. 64.) 'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' (*Id.* at p. 66.)" (*People v. Woods* (2015) 241 Cal.App.4th 461, 486.)

"An examination of California case law reveals that some physical pain or damage, such as lacerations, bruises, or abrasions is sufficient for a finding of 'great bodily injury.' (*People v. Jaramillo* (1979) 98 Cal.App.3d 830, 836–837 [multiple contusions, swelling and discoloration of the body, and extensive bruises were sufficient to show 'great bodily injury']; see *People v. Sanchez* (1982) 131 Cal.App.3d 718, disapproved on other grounds in *People v. Escobar* (1992) 3 Cal.4th 740, 751, fn. 5 [evidence of multiple abrasions and lacerations to the victim's back and bruising of the eye and cheek sustained a finding of 'great bodily injury']; see also *People v. Corona* (1989) 213 Cal.App.3d 589 [a swollen jaw, bruises to head and neck and sore ribs were sufficient to show 'great bodily injury'].)" (*People v. Washington* (2012) 210 Cal.App.4th 1042, 1047–1048.)

Castillo's injuries were equal to or more serious than those in the cases cited above. In addition to extensive bruising, abrasions, a black eye, and a cut behind the ear — which alone would be substantial evidence of great bodily injury — she lost consciousness at points during the attack, and sustained a permanent scar and lasting visual impairment. All of the evidence presented showed that these

injuries were the direct result of [Petitioner's] physical attack on Castillo. Substantial evidence supports the jury's finding under section 12022.7, subdivision (a), that [Petitioner] personally inflicted great bodily injury.

(Lodg. No. 4 at 12-14.)

The California Court of Appeal's rejection of this claim was not objectively unreasonable. As detailed by the Court of Appeal, the evidence demonstrated that the victim sustained bruises on her neck (3 RT 618), face (3 RT 620-21), arms (3 RT 624-25), legs (3 RT 628, 630-31), and left foot (3 RT 636). She also had a black eye (3 RT 622) and a cut on her back (3 RT 637, 644). A witness, Rebecca Madrigal, saw scrapes on the victim's knees and blood behind her ear. (3 RT 693.) Another witness, Officer Kim, saw minor swelling and bruises on the victim's face and blood behind her ear. (3 RT 701.) The victim lost consciousness during the attack. (3 RT 323.) She sustained permanent injuries consisting of a scar on her back (3 RT 638-39) and blurry vision (3 RT 619). This evidence permitted a reasonable inference that Petitioner inflicted a significant or substantial physical injury upon the victim. Accordingly, the California Court of Appeal's rejection of this claim did not involve an unreasonable application of the *Jackson* standard. *See* 28 U.S.C. § 2254(d)(1). Petitioner is not entitled to habeas relief on this claim.

//
//
//
//
//
//
//
//
//

**ORDER**

For all of the foregoing reasons, IT IS ORDERED that (1) the First Amended Petition is denied; and (2) Judgment shall be entered dismissing this action with prejudice.

DATED: March 15, 2019

/s/ Karen L. Stevenson
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE